**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard SNYDER, Defendant–Appellant.**

No. 89–3929.

United States Court of Appeals,
Sixth Circuit.

Argued July 24, 1990.
Decided Sept. 6, 1990.

offenses. For the following reasons, we affirm the district court's sentencing determination.

## I.

In February, 1988, the Mahoning County Task Force, working in conjunction with the Federal Bureau of Investigation, targeted Richard Snyder ("Snyder" or "appellant") for investigation as an alleged cocaine dealer in the Youngstown area. The Task Force's investigation was prompted by information (regarding Snyder's drug trafficking activities) that was obtained from confidential informants and from the surveillance of "known" drug traffickers. A search warrant authorizing the Task Force to search Snyder's residence and automobiles was subsequently obtained, and executed, on November 22, 1988. The search uncovered two kilograms of cocaine which were concealed in Snyder's basement, two scales, $27,347 in cash, various drug-related books and records, and two handguns (a Smith & Wesson 9mm. pistol, and a Smith & Wesson .45 caliber handgun) found in Snyder's bedroom nightstand. A "pat-down" search of Snyder (conducted not in his home but outside his car shortly after leaving his home) revealed eleven individual packets of white powder, each packet later determined to contain approximately ⅛ ounce of cocaine. Snyder was subsequently arrested and ordered detained pre-trial.

On December 14, 1988, a two-count indictment (case no. 4:88CR0362) charged Snyder with: possession with intent to distribute more than two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B) (Count I); and possession of a firearm, after having been previously convicted of a crime punishable by imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(a)(2) (Count II). Trial was set for April 17, 1989.

On April 6, 1989, Snyder was indicted (case no. 4:89CR0106) for conspiring to possess cocaine for distribution in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846,

Linda M. Betzer, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Edward Marek, Federal Public Defender, Donald Krosin (argued), Office of the Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before KENNEDY and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant Richard Snyder argues that the district court incorrectly applied the Federal Sentencing Guidelines when sentencing him for his cocaine-related

and for using a communication facility to commit drug violations in violation of 21 U.S.C. § 843(b). The indictment alleged that Michelle Snyder and the appellant conspired to possess, with the intent to distribute, cocaine from approximately January 30, 1989, to April 3, 1989, during which time the appellant was being held in pre-trial detention in the instant action (case no. 4:88CR0362). Specifically, the appellant, while incarcerated, called Michelle Snyder (who then called a third person using three-way calling) on February 6, 17 and 19, 1989, and on March 1 and 18, 1989, to discuss the purchase of a kilogram of cocaine.

The appellant subsequently pled guilty, pursuant to a plea agreement, to both counts of the December 14, 1988 indictment (case no. 4:88CR0362). Snyder also pled guilty to a tax evasion information (case no. 4:89CR0163) which charged him with violating 26 U.S.C. § 7201. Snyder further agreed not to contest judicial or administrative forfeiture of certain assets. In return for Snyder's pleas, the government agreed: (1) to make a binding recommendation, pursuant to Fed.R.Crim.P. 11(e)(1)(C), that any sentence of incarceration imposed for violation of 26 U.S.C. § 7201 be served concurrently with any other sentence of incarceration imposed on any other count; (2) to dismiss all counts against Snyder in case no. 4:89CR0106, and to "not bring additional charges against Richard Snyder for any illegal activity of which the government now has knowledge;" (3) that the appropriate base level under the Sentencing Guidelines for case no. 4:88CR0362 be 27; (4) to not recommend a specific sentence in case no. 4:88CR0362; (5) to remain mute when Snyder argued for acceptance of responsibility credit under the Sentencing Guidelines; and (6) to "not recommend federal prosecution" of Snyder's wife, Monica, for her sale of cocaine on November 22, 1988.

The Probation Department's Presentence Report recommended that Snyder's sentence be determined using an offense level of 34:

> Base Offense Level: The base offense level from the Drug Quantity Table for a total of 3210.24 grams, or 3.2 kilograms, of cocaine is 28.

> Specific Offense Level: Since a firearm was possessed during the commission of the offense, 2 points are added from section 2D1.1(b)(1). Application Note 3 to 2D1.1 states that the adjustment is to be made if a firearm is present, unless it is clearly improbable that the weapon is connected with the offense.

> Adjustment for Role in the Offense: Because of information provided by the Mahoning County Task Force in conjunction with the FBI, and through the use of cooperating witnesses, Richard Snyder is viewed as a leader of a drug trafficking operation and responsible for the supervision of at least 5 other participants. From 3B1.1(a), 4 points are added.

> . . . .

> Adjusted Offense Level (Subtotal)—34

> Adjustment for Acceptance of Responsibility: Because the defendant does not affirmatively accept responsibility for the instant offense and continued to carry on his drug related activities after being indicted, a 2 point reduction is not warranted.

> Total Offense Level—34

Presentence Report at 12.

After hearing counsels' arguments, and the defendant's statement, the district court: adopted the offense level of the plea agreement (27); rejected the 4–point enhancement for Snyder's alleged role in the offense; added 2 points for the presence of firearms; and refused to grant Snyder a 2–point reduction for acceptance of responsibility. Accordingly, the district court determined Snyder's adjusted offense level to be 29, Criminal History Category I, which directed an 87 to 108 month sentencing range. The district court therefore sentenced Snyder to 97 months incarceration (case no. 4:88CR0362), and to five years incarceration (case no. 4:89CR0163) to run concurrently with the 97 month term.

Snyder thereafter filed a timely notice of appeal pursuant to 18 U.S.C. § 3742(a)(2).

## II.

■ We must affirm the district court's sentence unless it was "imposed in violation of law or ... as a result of an incorrect application of the sentencing guidelines...." 18 U.S.C. § 3742(f)(1). Furthermore, this court may not disturb the factual findings that underlie the district court's sentencing decision unless such findings are clearly erroneous. *United States v. Moreno*, 899 F.2d 465, 470 (6th Cir.1990) (citing *United States v. Perez*, 871 F.2d 45, 47–48 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989)).

### *Possession of Firearms*

#### A.

■ The December 14, 1988 indictment (case no. 4:88CR0362) charged Snyder with: possession with intent to distribute cocaine (Count I), in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B); and possession of a firearm, after having been previously convicted of a crime punishable by imprisonment exceeding one year (Count II), in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(a)(2).

Pursuant to Sentencing Guidelines § 3D1.1: "When a defendant has been convicted of more than one count, the court shall: (a) Group the counts resulting in conviction into distinct Groups of Closely–Related Counts by applying the rules specified in § 3D1.2." Specifically, Guidelines § 3D1.2 provides:

All counts involving substantially the same harm shall be grouped together into a single Group. A count for which the statute mandates imposition of a consecutive sentence is excluded from such groups for purposes of §§ 3D1.2–3D1.5. Counts involve substantially the same harm within the meaning of this rule:

. . . .

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

Because the drugs and weapons were both found during the search of Snyder's residence on November 22, 1988, Count II (possession of a firearm by a former felon) was correctly categorized as a specific offense characteristic of the cocaine conviction (Count I). *See United States v. Whyte*, 892 F.2d 1170, 1171–72 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990). *See also* Guidelines §§ 2K2.1 ("Receipt, Possession, or Transportation of Firearms and Other Weapons by Prohibited Persons"); 3D1.2 ("Groups of Closely–Related Counts") and 3D1.3 ("Offense Level Applicable to Each Group of Closely–Related Counts").

#### B.

■ Section 2D1.1(b)(1) of the Federal Sentencing Guidelines provides that a defendant's base offense level be increased two levels for possession of a firearm during the commission of a drug offense governed by Chapter 2, Part D ("Offenses Involving Drugs") of the Sentencing Guidelines.

Snyder argues that the mere presence of firearms in his bedroom nightstand does not rise to the level of "possess[ion] during commission of the offense" as contemplated by Guidelines § 2D1.1(b)(1). Specifically, Snyder maintains that application note 3 to section 2D1.1(b)(1) precludes a two-level enhancement in his case. Application note 3 provides:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

United States Sentencing Commission, *Guidelines Manual*, § 2D1.1, comment. (n. 3) (Nov.1989). Essentially arguing that his two handguns "are more akin to a confined and unloaded hunting rifle rather than a drug-trafficker's arsenal," *United States v. Franklin*, 896 F.2d 1063, 1065 (7th Cir.

1990), Snyder maintains that it was "clearly improbable" that the handguns discovered during the search of his residence were connected to his drug offense.

Though Snyder argues that he never used the handguns during his criminal activities, the government need only show Snyder's constructive possession of the firearms to warrant a section 2D1.1(b) adjustment. *United States v. Luster,* 896 F.2d 1122, 1129 (8th Cir.1990). Constructive possession of an item is the " 'ownership, dominion, or control' " over the item itself, " 'or dominion over the premises' " where the item is located. *See United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988) (quoting *United States v. Cardenas,* 748 F.2d 1015, 1019 (5th Cir.1984)). *See also United States v. Williams,* 894 F.2d 208 (6th Cir.1990) ("We agree with the Fifth Circuit that there is a distinction between 'possession' required by the Guidelines, and 'using and carrying' required for the statutory violation." *Id.* at 212); *United States v. Lyman,* 892 F.2d 751 (8th Cir.1989), *petition for cert. filed,* No. 89–1634 (U.S. Apr. 19, 1990) ("The fact that a gun is located in a room that is not the center of drug transactions does not preclude the possibility that a drug dealer intended to use it to support his operations.... The key is always whether the placement of the gun or guns suggests they would be quickly available for use in an emergency." *Id.* at 754 n. 4); *United States v. Restrepo,* 884 F.2d 1294 (9th Cir. 1989) ("[I]n applying § 2D1.1(b)(1), the court need not find a *connection* between the firearm and the offense. If it finds that the defendant *possessed* the weapon during the commission of the offense, the enhancement is appropriate." *Id.* at 1296 (emphasis in original)). In fact, "[e]ven under the stricter standards of 18 U.S.C. § 924(c)(1)," *United States v. McGhee,* 882 F.2d 1095, 1099 (6th Cir.1989), we have held:

> [T]he evidence presented showed that defendant kept weapons in his apartment readily accessible, to facilitate his drug transactions. As the above review indicates, the statute does not require actual physical possession of a weapon or that

the defendant actually brandished the weapon in the commission of a drug offense. We hold that "uses" and "carries" should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions.

*United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989) (footnote omitted).

Because the two handguns could have facilitated Snyder's illegal cocaine transactions, it is not "clearly improbable" that the firearms were connected to the drug offense. Accordingly, the district court's application of section 2D1.1(b)(1) is not clearly erroneous. Furthermore, though the district court's cursory "finding" failed to explicitly "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), "[i]t is apparent that the sentencing judge flatly rejected defense counsel's argument that it was clearly improbable that there was any connection between the gun and the offense." *United States v. Durrive,* 902 F.2d 1221, 1231 n. 8 (7th Cir.1990). The Seventh Circuit concluded, as we do today, that:

> Because the facts of the case strongly suggest that the defendant possessed the handgun[s] during the [drug offense] and the defendant offered no evidence or credible argument for a finding that it was "clearly improbable" that the weapon was connected with the offense, the district court's cursory finding that it should apply the section 2D1.1(b)(1) enhancement withstands appellate scrutiny.... In a case where it is less obvious that the defendant possessed the dangerous weapon while committing the offense, a sentencing judge might run afoul of section 3553(c)'s requirement if the judge neglected to explicitly state why the defendant's base offense level should be enhanced under section 2D1.-1(b)(1).

*Id.* at 1231–32 n. 8. Snyder's first assignment of error is therefore without merit.

### Acceptance of Responsibility

■ The Guidelines allow a two-level reduction in total offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Guidelines § 3E1.1(a). A guilty plea does not entitle a defendant to a sentence reduction as a matter of right. Guidelines § 3E1.1(c); *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir.1990) (citing *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989)). "Although a guilty plea may provide some evidence of a defendant's acceptance of responsibility, that acceptance remains questionable where, as here, the plea may have been induced by factors of overwhelming evidence of guilt and desire to avoid the risk of conviction on other charges." *United States v. Carroll*, 893 F.2d 1502, 1512 (6th Cir.1990).

The Sixth Circuit previously announced the standard of review applicable to a district court's "acceptance of responsibility" determination:

> Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question, like its findings with respect to manager status, and minimal participant status, enjoys the protection of the "clearly erroneous" standard. Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the "clearly erroneous" standard will nearly always sustain the judgment of the district court in this area. Indeed, the guidelines specifically state that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

*United States v. Wilson*, 878 F.2d at 923 (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (citations omitted)).

■ Snyder argues that the district court's denial of an acceptance of responsibility reduction was without foundation.

Guidelines section 3E1.1 states that a defendant accepts responsibility when he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." In fact, the Commentary to section 3E1.1 sets forth the following criterion, among others, for determining whether a defendant accepted responsibility: "[a] voluntary termination or withdrawal from criminal conduct or associations." United States Sentencing Commission, *Guidelines Manual*, § 3E1.1, comment. (n.1) (Nov.1989).

Snyder conspired to acquire additional cocaine (case no. 4:89CR0106) while incarcerated on the instant charges (case no. 4:88CR0362). Given Snyder's actions, the district court's acceptance of responsibility determination can hardly be deemed clearly erroneous or without foundation. The appellant's assertion to the contrary is therefore without merit.

For the aforementioned reasons, the district court's sentencing determination is AFFIRMED.